**UNITED STATES of America, Appellee,**

v.

**Alan R. TODD, Appellant.**

No. 91–3358.

United States Court of Appeals, Eighth Circuit.

Submitted April 16, 1992.

Decided April 30, 1992.

Rehearing Denied June 2, 1992.

Mr. Ballard: No, your honor.
Mr. Welch: No, ma'am.
Mr. Treece: No, your Honor.
Tr., vol. 5 at 84.

Carl W. Bussey, Kansas City, Mo., argued, for appellant.

Anita Mortimer, Asst. U.S. Atty., Kansas City, Mo., argued, for appellee.

Before FAGG and WOLLMAN, Circuit Judges, and BOGUE,* Senior District Judge.

---

* The HONORABLE ANDREW W. BOGUE, Senior United States District Judge for the District of South Dakota, sitting by designation.

FAGG, Circuit Judge.

A jury convicted Alan R. Todd of possession with intent to distribute fifty grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1) (1988). The district court sentenced Todd to 188 months imprisonment. Todd appeals his conviction and sentence. We affirm.

Before trial, Todd filed a motion to suppress all physical evidence and his incriminating statements. At an evidentiary hearing, Drug Enforcement Administration agent Carl Hicks testified about the events leading to Todd's arrest at Kansas City International Airport (KCI). After the hearing, the magistrate judge found the following facts.

Hicks and Platte County Sheriff's Department detective Paul Carrill were watching for drug traffic at KCI. While awaiting the arrival of a plane from Los Angeles, Hicks and Carrill observed a man with a small child standing in the waiting area near the gate. When the passengers deplaned, Hicks and Carrill saw Todd imperceptibly nod at the man then proceed to the baggage claim area. Hicks thought it strange that Todd did not greet or join the man. When Hicks saw Todd talking to the man later near the luggage carrousels, Hicks became suspicious. After Todd retrieved two suitcases, Hicks approached Todd. Hicks showed Todd his badge, told Todd he was a police officer, and asked Todd whether he could talk with him. Todd agreed. Todd showed Hicks his one-way plane ticket from Los Angeles to Kansas City. The ticket had been purchased with cash the same day in the name of Todd Stevens. When Todd could not produce any identification, Todd pointed to the man with the child and told Hicks the man was his brother. The man showed Hicks his driver's license bearing the name Jerry Todd. When asked about the name discrepancy, Todd stated Jerry was his half-brother. In response to further questioning, Todd stated he had gone to Los Angeles to visit his sister but did not know her address or telephone number.

Hicks became more suspicious. He noticed Todd's hands were shaking and Todd was breathing rapidly. Hicks explained he was a drug agent watching for drugs coming into Kansas City and asked Todd whether he had brought any drugs with him. Todd denied having any drugs. Hicks then asked Todd whether he could search Todd's two suitcases, and Todd consented. Todd agreed to move the suitcases to nearby seats out of the way of other passengers. When Todd bent over to open his suitcases, Hicks noticed a brown paper sack in the inner pocket of Todd's topcoat. After Hicks found no drugs in Todd's suitcases, Hicks asked Todd's permission to look in the paper sack inside Todd's coat. Todd looked frightened. Todd gave Hicks permission to search the sack and then stated he had to use the restroom. When Todd tried to push detective Carrill aside to enter the restroom, Carrill and Hicks stopped him. After Hicks took Todd's coat and sack, Todd became hysterical. He started waving his arms and repeatedly yelled, "You're going to put me in jail." Hicks handcuffed Todd and told him he was no longer free to leave. Hicks also told Todd he would detain the coat and sack for a warrant search. Todd was very distraught and stated he was transporting the sack for his sister. When Hicks asked Todd whether the substance in the sack was white or green, Todd said the substance was brown. Hicks then advised Todd of his rights.

Although Todd consented to a search of the paper sack at the airport, Hicks did not search it because Todd was upset. After arriving at jail, officers told Todd he did not have to consent and could require them to get a search warrant. Todd signed a consent form. When officers searched the paper sack, they found a plastic bag containing 160 grams of cocaine base.

Based on these findings, the magistrate judge recommended suppression of Todd's statements after being handcuffed but before being advised of his rights. Otherwise, the magistrate judge recommended denial of the motion to suppress. The district court adopted the magistrate judge's report.

Todd contends the district court committed error in denying his motion to suppress the remaining evidence because the evidence was obtained in violation of the Fourth Amendment. As he must, Todd concedes the Fourth Amendment was not implicated when Hicks approached Todd in a public place, identified himself as a law enforcement officer, and asked Todd whether he was willing to answer questions. *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983); *United States v. Washington*, 957 F.2d 559, 562 (8th Cir.1992). Todd also recognizes the Fourth Amendment is not implicated when an officer asks a person questions, if the officer does not suggest the person must comply. *Royer*, 460 U.S. at 497, 103 S.Ct. at 1324; *Florida v. Bostick*, — U.S. —, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991). Todd, however, asserts he did not voluntarily consent to Hicks's questioning. To decide whether Todd's consent was voluntary, we examine the totality of the circumstances. *Washington*, at 562. There is no evidence that Hicks or Carrill threatened or coerced Todd in any way. Thus, the district court's finding that Todd voluntarily consented to talk with Hicks is not clearly erroneous. *Id.*

The Fourth Amendment is implicated when law enforcement officers stop and briefly detain a person for investigative purposes. *See Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). To justify an investigative detention, the officers must have a reasonable suspicion supported by articulable facts that criminal activity may be afoot. *Id.* at 21, 30, 88 S.Ct. at 1880, 1884. Todd asserts that if his initial contact with Hicks was consensual, the encounter escalated into an investigative stop requiring a reasonable suspicion of criminal behavior when Hicks told Todd he was a drug agent, asked Todd whether he had any drugs, and asked Todd for consent to search his suitcases. We disagree.

Officers need "no basis for suspecting a particular individual [to] ask questions of that individual, ask to examine the individual's identification, and request consent to search his or her luggage—as long as the police do not convey a message that compliance with their requests is required." *Bostick*, 111 S.Ct. at 2386 (citations omitted). On the other hand, if "all the circumstances involved in [Hicks's] questioning of [Todd] were so intimidating, threatening or coercive that a reasonable person would not [feel] free to leave," Hicks's conduct implicated the Fourth Amendment. *See United States v. McKines*, 933 F.2d 1412, 1419 (8th Cir.) (en banc), *cert. denied*, — U.S. —, 112 S.Ct. 593, 116 L.Ed.2d 617 (1991).

Here, Hicks merely identified himself as a drug agent, asked Todd whether he had any drugs, and asked permission to search Todd's suitcases. Although these factors are relevant to our analysis, they are not decisive. *Id.* at 1417–19. Nothing in the record indicates Hicks or Carrill wore uniforms, displayed weapons, or otherwise intimidated Todd. Viewing the totality of the circumstances, we believe a reasonable person would have felt free to leave. Because the consensual encounter between Hicks and Todd did not escalate to an investigative detention implicating the Fourth Amendment when Hicks asked permission to search Todd's suitcases, Hicks needed no reasonable suspicion at that time. *See United States v. Harvey*, 946 F.2d 1375, 1377–78 (8th Cir.1991).

Todd also asserts Hicks lacked a reasonable suspicion of criminal activity when Hicks and Carrill stopped Todd from entering the restroom and took his coat and sack. Reviewing the totality of the circumstances, we agree with the district court that Hicks and Carrill had a reasonable suspicion based on articulable facts that criminal activity was afoot. When Hicks and Carrill restricted Todd's movement, they knew Todd had travelled from Los Angeles, a known drug source city, on a one-way ticket purchased with cash. They also knew Todd had no personal identification and the name on his plane ticket may have been false. Despite his assertion that he visited his sister in Los Angeles, Todd did not know where she lived. Todd had "a look of terror" on his face when Hicks

asked to search the paper sack, leading Hicks to believe "he had caught [Todd] in the act of something illegal." Further, Todd delayed a consensual search of the sack until he could take the sack into a nearby restroom. He then moved toward the restroom in a way that indicated the sack contained contraband. Because a reasonable suspicion supported the investigative detention of Todd's coat and sack while the officers were seeking a search warrant, the detention did not violate the Fourth Amendment. *See United States v. Galvan*, 953 F.2d 1098, 1102–03 (8th Cir.1992). Thus, the district court properly admitted the evidence against Todd based on his written consent to a search of the sack.

 Second, Todd contends the Government's use of two peremptory challenges to strike black venirepersons violated his rights under *Batson v. Kentucky*, 476 U.S. 79, 96–98, 106 S.Ct. 1712, 1722–24, 90 L.Ed.2d 69 (1986). The Government explained that it struck one black venireperson because his brother had been addicted to cocaine. The Government struck the other venireperson because she appeared inattentive, impatient, and hostile to the prosecutor. The Government stated race was not a factor in its decision to exercise these strikes. The district court found the Government's reasons were race neutral. We conclude the district court's finding is not clearly erroneous. *See United States v. Hoelscher*, 914 F.2d 1527, 1540–41 (8th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 971, 112 L.Ed.2d 1057, *and cert. denied*, — U.S. —, 111 S.Ct. 2240, 114 L.Ed.2d 482 (1991) (relatives with drug problems sufficient race neutral reason); *United States v. Sherrills*, 929 F.2d 393, 394–95 (8th Cir.1991) (inattentiveness sufficient race neutral reason); *United States v. Lance*, 853 F.2d 1177, 1181 (5th Cir.1988) (demeanor sufficient race neutral reason).

Finally, Todd contends the district court improperly enhanced his sentence for obstruction of justice under U.S.S.G. § 3C1.1. At trial, Todd explained his trip to Los Angeles and his possession of the drugs. Although the jury rejected Todd's explanation, the district court did not base the obstruction of justice enhancement on that ground. Instead, based on personal observation of Todd at trial, the district judge expressly found Todd's testimony was unbelievable. Having reviewed the record, we conclude the district court's finding is not clearly erroneous. *See United States v. Seabolt*, 958 F.2d 231, 233 (8th Cir.1992); *United States v. Benson*, 961 F.2d 707, 709 (8th Cir.1992). In light of the enhancement for obstruction of justice, the district court did not commit clear error in denying Todd a reduction for acceptance of responsibility. *See United States v. Askew*, 958 F.2d 806, 811–12 (8th Cir.1992).

Accordingly, we affirm Todd's conviction and sentence.