BOWMAN, Circuit Judge.
Jay L. Depew, Sylvester A. Ziebarth, and Rusel J. Jagim were convicted in District Court[1] of aiding and assisting false and fraudulent tax returns, 26 U.S.C. § 7206(2) (1988), and conspiracy, 18 U.S.C. § 371 (1988). Judgment also was entered against Jagim for perjury before a grand jury, 18 U.S.C. § 1623 (1988), and against Depew by a transfer from the District of Colorado under Federal Rule of Criminal Procedure 20 for willfully making and filing a false tax return, 26 U.S.C. § 7206(1) (1988). Judgment against Depew was entered upon his plea of guilty to the above charges, and against Ziebarth and Jagim upon guilty verdicts returned by a jury after trial, where Depew testified for the government.
Depew was sentenced to fifty-eight months imprisonment, plus one year on the Colorado charge to run concurrently, to be followed by three years of supervised release. Ziebarth was sentenced to prison for forty-two months and two years of supervised release. Jagim was sentenced to fifteen months in prison and two years of supervised release. All three appellants were ordered to pay special assessments in various amounts.
*1036 Jagim appeals his convictions and Depew and Ziebarth appeal their convictions and sentences. We affirm.
The convictions in this case arose out of a fraudulent tax shelter scheme. Ziebarth owned a herd of Simmental cattle and asked Depew, a disbarred lawyer and former certified public accountant, to structure a tax shelter involving a limited partnership in cattle breeding, whose activities would include the purchase of embryos from so-called “super cows” for transfer to surrogates.
Depew put together the program, and thus “E-Z Breeders” was born. The scam was marketed to potential investors, somewhat unsuccessfully. Among those who did “invest,” however, was Ziebarth’s nephew Jagim, who along with some of his friends did participate in the scheme. Documents, including tax forms for the “investors,” were falsified and backdated to indicate that investments were made in the tax year before the date of the actual investment. This was done with some frequency for “investments” made after January 1, 1987, the effective date of the Tax Reform Act of 1986, which limited the benefits to be derived from tax shelters.
During an undercover investigation by a special agent of the Internal Revenue Service (IRS) who posed as a potential investor in another Depew-Ziebarth scheme, audio- and videotapes of various transactions and discussions were recorded, and numerous false tax documents were prepared. That investigation led to a federal grand jury probe, criminal indictments, and finally the convictions entered and sentences imposed by the court.
We will address the appeal of each defendant separately.
I.
Depew’s brief on appeal raises numerous arguments pro se, some of the more imaginative of which are: he cannot be punished under the tax laws of the United States because he is a citizen of the sovereign state (the “Republic”) of Idaho, now claiming “asylum” in the “Republic of Colorado”; the government in prosecuting him is acting on behalf of an agency, the IRS, that is controlled by a foreign entity; the court had no authority to decide this case because, among other reasons, “there is no nexus, i.e., voluntary contract between [De-pew] and the real parties of interest nor IRS,” Brief of Appellant Depew at 14; and the tax sought is an excise tax but the tax law does not state what “privilege” is being taxed.
These- issues are completely without merit, patently frivolous, and will be rejected without expending any more of this Court’s resources on their discussion.
Through appointed counsel, Depew raises three additional issues. First, Depew appeals the District Court’s refusal to permit him to withdraw his guilty pleas. De-pew entered guilty pleas in the South Dakota case on October 17, 1990, and in the Rule 20 case from Colorado on March 4, 1991. On June 28, 1991, after testifying for the government at the trial of Jagim and Ziebarth in March 1991, Depew moved to withdraw the guilty pleas because his research since entering the pleas led him to believe that the statutes under which he was charged did not apply to him because he is not a Fourteenth Amendment citizen. At a hearing on July 5, 1991, the motion was denied.
The District Court had discretion to “permit withdrawal of the plea upon a showing by [Depew] of any fair and just reason.” Fed.R.Crim.P. 32(d). We will not reverse the District Court’s decision to deny Depew’s motion to withdraw his guilty plea unless we find that the court abused its discretion. United States v. Morrison, 967 F.2d 264, 268 (8th Cir.1992).[2] *1037 Depew argues that the District Court abused its discretion because he had no assistance of counsel on his motion to withdraw, no evidentiary hearing was held, his motion was summarily denied without findings or conclusions, and “no determination was made by the Court at that juncture as to whether or not Federal Rules of Criminal Procedure Rule 11 had been satisfied.” Brief of Appellant Depew at 27.
The record demonstrates that Depew waived his right to assistance of counsel on the motion. He filed a motion to dismiss retained counsel on the same day he moved to withdraw his guilty plea. The court was reluctant to grant the motion to dismiss, but did so because counsel was retained and it was Depew’s prerogative to dismiss him. The record does not indicate, nor does Depew argue, that he requested appointment of counsel for a hearing on his motion. Further, although he was a disbarred attorney, Depew did have legal training and a knowledge of the criminal justice system. See United States v. Yagow, 953 F.2d 427, 431 (8th Cir.1992) (noting that factors to be considered when evaluating validity of waiver include “the defendant’s education, his knowledge of or previous contact with the criminal justice system”), cert. denied, — U.S. —, 113 S.Ct. 103, 121 L.Ed.2d 62 (1992). It is apparent from the record that he was using that knowledge to disrupt and manipulate the legal process, actions that the court had no obligation to tolerate. See id. at 431-32. Viewing the facts and circumstances of this situation as a whole, it is clear that Depew voluntarily, intelligently, and knowingly waived his right to counsel on his motion to withdraw his guilty plea. See id. at 431.
Depew has made no showing in this Court that his original pleas were not taken in compliance with Federal Rule of Criminal Procedure 11, nor has he demonstrated why the court should have been required to revisit the plea-taking hearing at the time of the motion to withdraw. Further, an evidentiary hearing, and concomitant findings and conclusions, are not required where, as here, “the allegations in the motion are inherently unreliable, are not supported by specific facts or are not grounds for withdrawal even if true.” United States v. Thompson, 906 F.2d 1292, 1299 (8th Cir.), cert. denied, — U.S. —, 111 S.Ct. 530, 112 L.Ed.2d 540 (1990).
While there are several factors that may be taken into account when considering a motion to withdraw a guilty plea, see, e.g., United States v. Boone, 869 F.2d 1089, 1091-92 (8th Cir.), cert. denied, 493 U.S. 822, 110 S.Ct. 81, 107 L.Ed.2d 47 (1989), Depew cannot get past the most critical test: he has not demonstrated “any fair and just reason” for withdrawal of his pleas. Fed.R.Crim.P. 32(d); see also Boone, 869 F.2d at 1091. Such a showing is not even conceivable on the grounds Depew alleged, thus the District Court could not have abused its discretion in denying the motion.
Depew next argues that he was effectively deprived of assistance of counsel at his sentencing because of the District Court’s failure to grant a continuance. We disagree.
Depew’s sentencing was continued several times, for the convenience of both counsel and the court, from March 1991, when he entered his final plea (on the Colorado charge) and complied with his obligations under the plea agreement by testifying at the trial of his coconspirators. After these continuances, the sentencing date was finally set for July 1, 1991. On June 28, 1991, a few days before the scheduled sentencing, Depew dismissed his retained counsel. On July 1, Depew appeared for sentencing and advised the court that he did want assistance of counsel, just not the previously retained counsel who had been with the case since the beginning. The court noted: “So we have been waiting to sentence you since October of 1990 and you have had, in the Court’s opinion, ample opportunity to prepare for this sentencing and all you have been doing is stalling and taking every advantage of the process for your own benefit.” Transcript of Hearing of July 1, 1991, at 9-10. The court advised Depew of his right to counsel, retained or *1038 appointed, and gave Depew until the end of the week to make a decision.
On July 5, 1991, the court reiterated the importance of having counsel for sentencing and the folly of proceeding pro se, advised Depew that the court would appoint counsel if Depew so desired, explained in some detail sentencing under the guidelines, and indicated that the court was considering an upward departure to De-pew’s guidelines sentence. Sentencing then was reset for August 5,1991, with the court warning Depew, “If you appear on the 5th and we will have a continuation of this procrastination concerning counsel, I will consider making a decision on the record that you have waived your Sixth Amendment right to counsel by reason of your inactivity.” Transcript of Hearing of July 5, 1991, at 17. Depew was instructed to keep the court advised of his progress in retaining counsel. Nevertheless, Depew did not ask for appointment of counsel until Friday, August 2, 1991.
On Monday, August 5, 1991, at 8:00 a.m., Depew came before the court for sentencing. The motion for appointment of counsel was granted, but counsel’s motion for a continuance of several weeks was denied. The court had taken the precaution before July 5 of advising the attorney who ultimately was appointed for Depew’s sentencing that he might be appointed standby counsel should Depew decide to proceed pro se. At that time the court also provided counsel with a copy of the presentence report. Thus counsel, notwithstanding his recent appointment, had knowledge of the case for a month, and was familiar with the presentence report. The hearing was continued until 2:00 p.m. the afternoon of August 5, at which time Depew was sentenced.
In short, the court gave Depew one full month to find counsel and prepare for sentencing. A persuasive argument can be made that Depew waived his right to counsel, just as the court suggested would happen. We need not so conclude, however, because Depew has not demonstrated that the refusal to grant a further continuance from August 5 prejudiced him in any way. We cannot say the District Court abused its discretion. See United States v. Ul-rich, 953 F.2d 1082, 1085 (8th Cir.1991) (“Denial of a continuance is grounds for reversal only if the trial court abused its discretion and the defendant was prejudiced by the denial.”).
For his final issue on appeal, Depew challenges his sentence on two grounds. He contends that he was entitled to a reduction in his offense level for acceptance of responsibility, and also that the court erred in departing upward.
Depew was denied a reduction to his offense level for acceptance of responsibility. See United States Sentencing Commission, Guidelines Manual [hereinafter U.S.S.G.], § 3E1.1 (Nov.1990). Depew believes he is entitled to this two-level reduction because he pleaded guilty and testified for the government at the trial of Jagim and Ziebarth. His actions, however, do not entitle him to a reduction as a matter of right. See U.S.S.G. § 3E1.1(c); United States v. Miller, 951 F.2d 164, 165 (8th Cir.1991). Depew suborned perjury and perjured himself before the grand jury. He also raised a transparently frivolous claim that he was immune from prosecution under the laws under which he was charged, and thereby sought to withdraw his guilty pleas. Cf. Ulrich, 953 F.2d at 1085 (affirming district court’s denial of adjustment because defendant believed the law under which he was convicted was a bad law). He expressed no remorse for his illegal acts. Giving the District Court the deference it is due, we find its decision to deny the reduction is not clearly erroneous. See Miller, 951 F.2d at 165.
The court’s decision regarding Depew’s acceptance of responsibility is further buttressed by its determination that Depew’s sentence should be increased for obstruction of justice. See United States v. Todd, 963 F.2d 207, 211 (8th Cir.1992) (“In light of the enhancement for obstruction of justice, the district court did not commit clear error in denying ... a reduction for acceptance of responsibility.”). Because of the extent of Depew’s obstruction, the court chose not to enhance Depew’s sentence un *1039 der U.S.S.G. § 3C1.1 (Nov.1990), under which it could have increased Depew’s offense level by only two levels on the ground of Depew’s obstruction of justice. Instead, the court found Depew’s behavior — including perjury, suborning perjury, his extensive and long-term criminal participation in the tax fraud, and his flooding the court with frivolous motions including some challenging the court’s Article III status — so egregious that it chose to enhance Depew’s sentence more substantially under U.S.S.G. § 5K2.0 (Nov. 1990).
The court has the discretion to depart from the guidelines to the extent it deems necessary for “an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration” by the guidelines. 18 U.S.C. § 3553(b) (1988). The court’s reasons for upward departure under section 5K2.0 were supported by the record. See United States v. Lloyd, 958 F.2d 804, 805 (8th Cir.1992) (stating that reviewing court must determine as a question of fact whether the reasons justifying departure exist). Further, the circumstances relied upon are sufficient to warrant departure, and the final sentence is reasonable. See id.
Depew’s convictions and sentence are affirmed.
II.
Jagim challenges the District Court’s failure to grant him a continuance so that he might collect additional information on the federal tax problems of prospective jurors. As a taxpayer who is a party to a judicial proceeding to determine his liability under the federal tax laws, Jagim was entitled to receive, upon written request, information “as to whether an individual who is a prospective juror in such proceeding has or has not been the subject of any audit or other tax investigation by the Internal Revenue Service.” 26 U.S.C. § 6103(h)(5) (1988).
Two weeks before trial, Jagim requested and received a list of individuals on the jury panel, and then sent a written request to the Secretary of the Treasury for the information to which he was entitled pursuant to section 6103. The day before trial, Jagim received the information, but it was incomplete as it did not contain a portion of the pre-1988 information. Jagim was advised at that time that an expanded search would require two additional weeks and promptly filed a motion for a continuance. The motion was denied.
During voir dire the court asked if any members of the jury panel had been subject to an IRS audit or investigation. Based on the response, Jagim informed the court that the information he received from the IRS indicated that some who had not responded to the question should have. The court’s query was then expanded to include any sort of inquiry from the IRS; still, Jagim insisted, three persons who should have responded did not. The court offered to excuse those persons but Jagim declined the offer.
Jagim has suggested that this statutory right to information before trial is absolute. We cannot agree. We believe the party seeking the information has a responsibility to make a timely request. With the trial originally set for September 24, 1990, Jagim had many months to demonstrate diligence in making his request.[3] His failure to do so, or to show a valid reason for his lack of diligence, does not require that we now reverse his conviction because he could not get all the information he thought he should have before trial began.
In any event, “the denial of a taxpayer defendant’s request for a continuance to obtain additional section 6103(h)(5) information is not reversible when the district court conducts an appropriate voir dire.” United States v. Axmear, 964 F.2d 792, 793 (8th Cir.1992), petition for cert. filed, 61 U.S.L.W. 3194 (U.S. Aug. 17, 1992) (No. 92-417). We hold that the voir dire here *1040 was appropriate and that Jagim suffered no prejudice from the denial of his motion for a continuance.
Jagim next argues that he was prejudiced by the court’s refusal to sever his trial from Ziebarth’s. We do not agree.
Jagim moved to sever upon learning, at the end of the government’s case, that Zie-barth would be exercising his Fifth Amendment right not to testify. An offer of proof was made wherein Ziebarth told the court that he would offer testimony exculpatory to Jagim if they were tried separately. Ziebarth’s counsel advised the court, however, that the offer was conditional: Ziebarth would testify only if his trial preceded Jagim’s. The motion was denied, with the court granting Jagim leave to renew it at the instruction conference. The next day, after the close of all the evidence, Ziebarth informed the court that he would testify regardless of the order of trials. The District Court let stand its ruling denying Jagim’s motion.
As Ziebarth and Jagim were co-conspirators, we start, as did the District Court, with a well-grounded predisposition in favor of a joint trial. See United States v. Drew, 894 F.2d 965, 968 (8th Cir.), cert. denied, 494 U.S. 1089, 110 S.Ct. 1830, 108 L.Ed.2d 959 (1990). Moreover, as in any case involving the denial of a motion for severance, before we will reverse the court’s decision, the defendant must demonstrate that the court abused its discretion resulting in clear prejudice to his case. See id. at 967. Jagim has not made this demonstration.
As to whether the court abused its discretion, we note that Ziebarth’s offer to testify was either conditional on the order of the severed trials, or at least so indefinite that the court reasonably could construe it as being so conditioned. Either way, the court had a sufficient reason for denying the motion for separate trials. See United States v. Lenfesty, 923 F.2d 1293, 1298 (8th Cir.), cert. denied, — U.S. —, 111 S.Ct. 1602, 113 L.Ed.2d 665 (1991). Where an offer to testify if trials are severed is conditional, the court does not abuse its discretion by denying the motion. Id. Further, having reviewed Ziebarth’s proffered testimony, considered with the other evidence presented at trial, we agree with the District Court that Ziebarth’s testimony would have been highly susceptible to significant impeachment. Such testimony would not be “substantially exculpatory,” United States v. DeLuna, 763 F.2d 897, 920 (8th Cir.), cert. denied, 474 U.S. 980, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985), which is to say that it was not likely to be of much help to Jagim. Thus, we hold that the presentation of Jagim’s case was not clearly prejudiced by the absence of Ziebarth's testimony, even if Ziebarth had made an unconditional offer to testify at a separate trial.
Jagim also requested severance because a single conspiracy was charged in the indictment, but there was proof at trial of more than one conspiracy. The request was denied, and. Jagim claims prejudice as a result of the variance.
“A variance arises when the evidence adduced.at trial establishes facts different from those alleged in an indictment.” Dunn v. United States, 442 U.S. 100, 105, 99 S.Ct. 2190, 2193, 60 L.Ed.2d 743 (1979). We agree with Jagim that the evidence at trial demonstrated a variance between indictment and proof, but we do not agree that this resulted in any prejudice to him sufficient to warrant the reversal of his convictions.
Much of the evidence at trial consisted of the recordings made by the IRS special agent. This was evidence of the conspiracy involving the phony partnership that the agent was involved in with Ziebarth and Depew and it did not involve E-Z Breeders. Jagim had no involvement in this scheme, and it started well after Jagim signed his last false tax form. Although the goal of defrauding the government by falsification of tax documents was the same for both EZ Breeders and this later scheme, they were separate conspiracies. Because of the change in the tax laws after 1986, the second scheme took on a slightly different form from the E-Z Breeders scam. Further, there was no evidence that anyone other than Ziebarth, Depew, and the agent *1041 were involved, while the E-Z Breeders scam involved numerous others, including Jagim.
Only if this variance “affect[ed] the substantial rights” of Jagim is reversal required. United States v. Berger, 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314 (1935). Having thoroughly reviewed the record, we are satisfied that “this case did not involve so many coconspirators and conspiracies that a jury could not be expected to give separate and individual consideration to the evidence against each defendant.” United States v. Jones, 880 F.2d 55, 66 (8th Cir.1989). We believe that the evidence of each conspiracy was sufficiently compartmentalized and separable so that there is no likelihood the jury imputed to Jagim guilt for the conspiracy in which he was not involved. Cf. United States v. Rosnow, 977 F.2d 399, 407 (8th Cir.1992). As support for this conclusion we note that Ziebarth was convicted of nine substantive tax fraud counts; of those same charges, Jagim was convicted only of the single count involving the false income tax return he signed — this single conviction despite the jury instruction that the acts of cocon-spirators to a single conspiracy are attributable to others in that same conspiracy, whether or not the others participated in or even were aware of those acts. The variance between the single conspiracy charged in the indictment and the proof at trial of more than one conspiracy did not affect Jagim’s substantial rights, and therefore the District Court’s denial of his severance motion cannot be a basis for reversing his convictions.
Jagim’s convictions are affirmed.
III.
Finally, we turn to Ziebarth’s appeal. He raises three issues.[4] First, he adopts Jagim’s argument that the District Court’s failure to grant a continuance so that complete IRS audit and investigation information could be researched by the Department of the Treasury requires reversal. We have addressed and rejected that argument in Part II. Moreover, Ziebarth never even made an initial request of the Secretary for the information; and certainly was not entitled to a continuance so he could cover his lack of diligence.
Ziebarth also claims that there was insufficient evidence to convict him. In support of his argument, Ziebarth contends the evidence at trial was not sufficient to prove beyond a reasonable doubt that he took part in some of the acts in furtherance of the conspiracy; that he had the necessary intent to have “willfully” violated the laws as charged; or that he knew the acts taken to implement the tax shelter fraud, such as backdating tax forms, were illegal.
When the claim on appeal is insufficient evidence, we view the evidence in the light most favorable to the verdict, giving the government the benefit of all reasonable inferences. United States v. Meyer, 906 F.2d 1247, 1252 (8th Cir.1990). We will reverse the jury’s verdict “only upon a demonstration that a rational jury would have no choice but reasonably to doubt the existence of an element of a charged crime.” United States v. Watson, 952 F.2d 982, 987 (8th Cir.1991), cert. denied, — U.S. —, 112 S.Ct. 1694, 118 L.Ed.2d 406 (1992). Having reviewed the record, we conclude that the evidence against Ziebarth on these charges was overwhelming. Moreover, Ziebarth’s arguments demonstrate his misunderstanding of the elements of the crimes charged. The jury’s finding of guilt beyond a reasonable doubt is supported by the evidence and will not be disturbed.
Ziebarth challenges his guidelines sentence on several grounds.
First, he attacks the District Court’s decision to increase his sentence by two levels for using “sophisticated means ... to impede discovery of the nature or extent of the offense.” U.S.S.G. *1042 § 2T1.4(b)(2) (Nov.1990). Before such enhancement is appropriate, the scheme must be shown to be more elaborate or carefully planned “than a routine tax-evasion case.” Id. comment, (n. 2).
The scheme here was extensively planned and executed with careful attention to detail. First the tax shelter scheme was conceived and initiated; then the original conspirators — Depew and Ziebarth— brought other participants into the deal and false tax forms were prepared for and signed by many of them. This was not a case where an individual taxpayer completed his individual 1040 form with false information to avoid paying some of his federal taxes. These coconspirators were affirmatively making profits from this scam.[5] Our review of the record convinces us that the court did not err in enhancing Ziebarth’s sentence under section 2T1.4(b)(2).
Ziebarth also challenges the court’s four-level increase of his offense level for his role as “an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive.” U.S.S.G. § 3B1.1(a) (Nov.1990). We believe the record supports the enhancement.
The initial idea for E-Z Breeders was Ziebarth’s and he willingly participated with Depew in the recruitment of participants (more than five), several of whom were Ziebarth’s relatives. There is evidence that Ziebarth received the bulk of the ill-gotten gains from the scam, and that he was slated to receive a share of the profits that was larger than the amount that was to go to others who participated in the later conspiracy with the IRS agent. The District Court did not clearly err in applying section 3B1.1(a) to increase Ziebarth’s offense level. See United States v. Yerks, 918 F.2d 1371, 1375 (8th Cir.1990).
Last, Ziebarth attacks the District Court’s reliance upon U.S.S.G. § 5K2.0 and 18 U.S.C. § 3553(b) to increase his sentence by an additional twelve months for an “aggravating or mitigating circumstance ... not adequately taken into consideration by the Sentencing Commission.” The court found that Ziebarth obstructed justice by suborning perjury, although he was never charged with the offense. The court further determined that Ziebarth’s nephew Jagim, while perhaps not a “vulnerable victim” within the meaning of U.S.S.G. § 3A1.1 (Nov.1990), nevertheless was dragged into the conspiracy by his uncle in part because of the familial relationship. The court found that these circumstances, together with Ziebarth’s extensive and long-term criminal activity, supported its decision to depart upward under § 5K2.0, as it also did for similar reasons in Depew’s case.
We agree that in the totality of circumstances here present the upward departure of twelve months is warranted. We find sufficient evidence in the record to support the court’s findings, and we believe that the final sentence of forty-two months is reasonable. See Lloyd, 958 F.2d at 805.
Ziebarth’s convictions and sentence are affirmed.
IV.
We have taken with the direct criminal appeals Ziebarth’s appeal from the District Court’s dismissal without prejudice of his pro se 28 U.S.C. § 2255 (1988) motion to vacate, set aside, or correct sentence. Because Ziebarth filed this motion while his direct appeal was pending before this Court, the District Court properly dismissed the section 2255 motion as prematurely filed. See Masters v. Eide, 353 F.2d 517, 518 (8th Cir.1965) (per curiam). The dismissal without prejudice is affirmed. To the extent any of Ziebarth’s section 2255 issues have not been resolved by this opinion, they now may be raised in a section 2255 motion in the District Court.
V.
In all of the appeals considered in this opinion, the judgment of the District Court is affirmed in all respects.

. The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

. But see United States v. Wilson, 955 F.2d 547, 552 (8th Cir.1992) (reviewing district court’s decision for clear error). Wilson cited United States v. Abdullah, 947 F.2d 306, 311 (8th Cir. 1991), cert. denied, — U.S. —, 112 S.Ct. 1969, 118 L.Ed.2d 569 (1992), for the proposition that clear error is the standard of review. We believe the Wilson court misstated the standard, however, as the Abdullah court clearly stated, "The district court's decision whether to grant the motion [to withdraw a guilty plea] is reversible only for abuse of discretion.” Id.

. We note that, with several continuances after the original trial date, the jury panel might not have been the same in March 1991 as it was in September 1990. But Jagim did not even make the effort to ask for a list until the end of February, although he knew of the March trial date well before that.

. In a pro se reply brief, Ziebarth raises several issues he apparently wants the Court to consider as though they were presented as a part of his appeal. These issues are not properly before us, and we note, in any event, that the arguments are frivolous, totally without merit, and unworthy of serious consideration by the Court.

. The other participants in the E-Z Breeders program were cheating on their taxes and then paying a portion of their illicit gains to Depew and Ziebarth.