**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Gordon Howard LUCAS, Jr.,**
**Defendant–Appellant.**

**No. 91–30038.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 10, 1991.

Decided April 28, 1992.

Peter Offenbecher, Asst. Federal Public Defender, Seattle, Wash., for defendant-appellant.

Paula E. Boggs, Asst. U.S. Atty., Seattle, Wash., for plaintiff-appellee.

Before WALLACE, Chief Judge, HUG and RYMER, Circuit Judges.

HUG, Circuit Judge:

Lucas was convicted of robbing U.S. Bank, Guaranty Center Branch, on August 20, 1990. On appeal, Lucas alleges that evidence obtained during questioning by FBI agents shortly after his arrest was admitted at his trial in violation of his Fourth and Fifth Amendment rights. He also argues that the jury instructions given at trial were improper, and that the evidence was insufficient to support the bank robbery conviction.

The district court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291. We reverse the district court's denial of Lucas's Motion to Suppress on Fifth Amendment grounds. Consequently, we need not address Lucas's claim that his motion to suppress should have been granted on Fourth Amendment grounds. The case will be remanded for a new trial without the illegally obtained evidence. We affirm the district court's choice of jury instructions and its denial of Lucas's Motion for Acquittal for insufficient evidence.

I.

On August 20, 1990, a man walked into U.S. Bank, Guaranty Center Branch and stepped up to one of the teller windows carrying some plastic shopping bags. He placed the bags on the teller counter along with a note that read: "Give me all your money, put all your money in the bag." The man then said: "Put it in the bag." The teller set off a silent alarm and proceeded to put money into the bags as the robber had requested.

At approximately 4:00 p.m. on August 29, 1991, Lucas was arrested by King County police officers investigating an auto theft report. Following his arrest, Lucas was taken to a police substation and placed in a holding cell. Policemen then entered the cell for the purpose of interviewing Lucas, but after advising him of his *Miranda* rights, they ended the interview because Lucas asked to consult an attorney. The police then told Lucas that he would not need a lawyer because he had not been charged with anything.

At approximately 5:45 p.m. the police called the FBI and related their suspicion that Lucas was involved in the bank rob-

bery. The FBI agents went to the substation, read Lucas his *Miranda* rights, and proceeded with their interview after Lucas had waived his rights. Lucas eventually admitted involvement in the bank robbery. He signed a full confession and initialed the back of a surveillance photograph taken during the crime. Both the written confession and the photograph were admitted against Lucas at his trial. From the time Lucas requested a lawyer while being detained on suspicion of auto theft, until the time he was booked by the FBI for bank robbery, he was never provided access to counsel.

■ Lucas's first contention is that the district court erred by not granting his motion to suppress. We review *de novo* whether a custodial statement must be suppressed on Fifth Amendment grounds. *See United States v. Connell*, 869 F.2d 1349, 1351 (9th Cir.1989); *Robinson v. Borg*, 918 F.2d 1387, 1390 (9th Cir.1990), *cert. denied*, —— U.S. ——, 112 S.Ct. 198, 116 L.Ed.2d 158 (1991).

The Government cites two theories in support of its contention that Lucas's right to counsel was not violated. First, the Government argues that Lucas waived his Fifth Amendment right to counsel by not raising the argument until his hearing to determine the voluntariness of his confession. Second, the Government argues that later questioning about an unrelated offense by different law enforcement officers does not implicate the Fifth Amendment so long as the second interrogation is preceded by a *Miranda* warning and the suspect waives these rights. We disagree with the Government on both issues and hold that the district court erred by not granting Lucas's motion to suppress as required by *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), and *Arizona v. Roberson*, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988).

■ First, Lucas never waived the *Edwards* issue as the Government contends. The *Edwards* issue was raised from the outset of the district court proceedings, and renewed at the conclusion of those proceedings. Lucas first raised the *Edwards* issue

in his memorandum in support of his motion to suppress, and again during the evidentiary hearing. The only testimonial evidence offered by counsel on either side during this hearing was from Lucas who testified that he had asked for counsel and was not provided with any. The Government's argument that Lucas waived the *Edwards* issue is totally unsupported by the record.

■ Second, the Government argues that later questioning about an unrelated offense by different law enforcement officers does not implicate the Fifth Amendment so long as the second interrogation is preceded by a *Miranda* warning and the suspect waives those rights. However, the Government's argument conflicts with recent Supreme Court case law and the district court erred by not granting Lucas's motion to suppress on Fifth Amendment grounds.

■ If a suspect indicates a desire to remain silent, the interrogation must cease. *Miranda v. Arizona*, 384 U.S. 436, 474, 86 S.Ct. 1602, 1627–28, 16 L.Ed.2d 694 (1966). If the suspect requests counsel, the interrogation must cease until an attorney is present. *Id.* Not all *Miranda* waivers are effective. This basic rule was articulated in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), where the Court stated that

> a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights.... [A suspect who has requested an attorney] is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

*Id.* at 484–85, 101 S.Ct. at 1885. The rule from *Edwards* has been continually reinforced by other Supreme Court decisions.

In *Minnick v. Mississippi*, —— U.S. ——, 111 S.Ct. 486, 490, 112 L.Ed.2d 489 (1990), the Court stated that:

The merit of the *Edwards* decision lies in the clarity of its command and the certainty of its application. We have confirmed that the *Edwards* rule provides " 'clear and unequivocal' guidelines to the law enforcement profession."

*Id., quoting Arizona v. Roberson*, 486 U.S. 675, 682, 108 S.Ct. 2093, 2098, 100 L.Ed.2d 704 (1988). Applying the rule from *Edwards* to the facts of this case requires us to remand for a new trial. The defendant testified he asked for an attorney after being given a *Miranda* warning following his arrest on suspicion of automobile theft, but was denied representation because he was not being charged with anything at that time. The Government contends for the first time on appeal that there is a factual question whether Lucas ever requested an attorney. The Government never argued at trial that Lucas did not request counsel. The Government simply argued that it did not matter whether he did so. We have consistently held that a party cannot raise new factual issues on appeal after failing to raise those issues or present that evidence in a timely fashion before the trial court. *See, e.g., United States v. Kimmel*, 741 F.2d 1123, 1125 (9th Cir.1984). Although Lucas was read his *Miranda* rights again before the FBI questioning regarding the bank robbery, the second interrogation was close in time to his initial request for an attorney and did not relieve the officer's legal obligation to provide counsel.

In *Minnick v. Mississippi*, —— U.S. ——, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990), a suspect requested an attorney during an interview with the FBI. The interview then ceased and an appointed attorney met with the suspect on two or three occasions. *Id.* 111 S.Ct. at 488. Three days later, county sheriffs questioned the suspect without his attorney present. *Id.* at 488–89. The Supreme Court held that the fact that separate law enforcement officials were involved did not circumvent the suspect's right to counsel. The *Minnick* Court stated that "when counsel is requested, interrogation must cease, and officials may not reinitiate interrogation without counsel present, whether or not the ac-cused has consulted with his attorney." *Minnick*, 111 S.Ct. at 491.

In *Arizona v. Roberson*, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988), the Court stated that an accused who invokes his right to counsel is also protected from subsequent questioning about another unrelated offense. In *Roberson*, the suspect was arrested on suspicion of burglary and requested an attorney before answering questions. *Roberson*, 486 U.S. at 678, 108 S.Ct. at 2096. Three days later, while still in custody, different officers read the suspect his *Miranda* rights, proceeded to interrogate him, and secured an incriminating statement about a second, unrelated offense. *Id.*

The Supreme Court held that the presumption that a suspect considers himself unable to deal with authorities without legal assistance "does not disappear simply because the police have approached the suspect, still in custody, still without counsel, about a separate investigation." 486 U.S. at 683, 108 S.Ct. at 2099. The rule emerging from *Roberson* is that "[w]hether a contemplated reinterrogation concerns the same or a different offense, or whether the same or different law enforcement authorities are involved in the second investigation," police have an obligation to provide counsel once it is requested by a suspect. 486 U.S. at 687–88, 108 S.Ct. at 2101–02.

Finally, the Government argues that any error in this case was harmless and should not subject this case to remand. Although we agree that harmless error analysis is appropriate in this case, we do not believe that the denial of Lucas's motion to suppress was harmless. In *Arizona v. Fulminante*, —— U.S. ——, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), the Court made clear that harmless error analysis is appropriate for errors "which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Fulminante*, 111 S.Ct. at 1264. The denial of Lucas's motion to suppress led to the

admission of both his signed confession and the signed surveillance photograph. Without this evidence, the Government would have had to prove its case with only an unsigned surveillance photograph, and an in-court identification of Lucas by the bank teller. Balanced against the probative value of the confession, we conclude that the denial of Lucas's motion to suppress was not harmless beyond a reasonable doubt.

We hold that under the circumstances of this case, Lucas's Fifth Amendment rights were violated when he was interrogated by the FBI within four hours of his request for counsel while being questioned by local authorities. It does not matter that the interrogation concerned a different offense and was undertaken by a different law enforcement agency. Even though he was given a *Miranda* warning again and his confession may have been voluntary, Lucas did not initiate contact with the FBI and, under *Roberson,* his unhonored request for counsel vitiates his subsequent decision to talk without counsel's presence.

### II.

■ Lucas's second contention is that the district court erred by choosing jury instructions that did not include an instruction on the allegedly lesser included offense of bank larceny. Because this issue may arise in a new trial, we discuss it here. The standard of review for determining whether a district court erred in refusing to give a proposed jury instruction is unclear in this circuit. *United States v. Ayers,* 924 F.2d 1468, 1475 (1991), *citing United States v. Slaughter,* 891 F.2d 691, 699 (9th Cir.1989). The panel in *United States v. Busby,* 780 F.2d 804, 806 (9th Cir.1986), relied upon the abuse of discretion standard. The panel in *United States v. Anguiano,* 873 F.2d 1314, 1317 (9th Cir.), *cert. denied,* 493 U.S. 969, 110 S.Ct. 416, 107 L.Ed.2d 381 (1989), relied upon the *de novo* standard. The most factually similar case on point is *United States v. Gregory,* 891 F.2d 732, 734 (9th Cir.1989), which held that whether one offense is necessarily included in another is reviewed *de novo.* Under either standard, however, we affirm the district court's choice of jury instruction.

The district court refused Lucas's request to instruct the jury on the allegedly lesser included offense of bank larceny. This decision is entirely consistent with our decision in *United States v. Gregory,* 891 F.2d 732 (9th Cir.1989), which held that:

> [B]ank larceny ... contains a specific intent element which need not be proved in the bank robbery context.... We thus hold that bank larceny cannot be "necessarily included" in bank robbery. Accordingly, the district court did not err in refusing Gregory's lesser included offense instruction.

*Gregory,* 891 F.2d at 734. The issue before the court in *Gregory* is identical to the issue now before us. Lucas urges this panel to reconsider *Gregory.* We reject this suggestion, however, since "a panel not sitting *en banc* has no authority to overturn Ninth Circuit precedent." *United States v. Aguilar,* 883 F.2d 662, 690 n. 25 (9th Cir.1989), *cert. denied,* — U.S. —, 111 S.Ct. 751, 112 L.Ed.2d 771 (1991).

### III.

Lucas's final contention is that the district court erred by denying his motion for acquittal because there was insufficient evidence to support the bank robbery conviction. We must consider this issue because of the double jeopardy implications on a future retrial.

■ A defendant's motion for acquittal should be granted if no rational trier of fact could find the essential elements of the crime beyond a reasonable doubt after viewing the evidence in the light most favorable to the government. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The government is entitled to all reasonable inferences that might be drawn from the evidence. *Id.* at 319, 99 S.Ct. at 2789. The test applied by the trial court and the test applied by the appellate court when reviewing the trial court's decision as to the sufficiency of the evidence are, as a practical matter, identical. *United States v. Leal,* 509 F.2d 122, 125 (9th Cir.1975).

Lucas argues on appeal that no rational trier of fact could have found that the Government carried its burden of proof to support the intimidation requirement of bank robbery. Taking by intimidation is a necessary element of bank robbery and if the district court's finding of intimidation was unreasonable, we would reverse the conviction. The facts, however, suggest that the district court's finding was reasonable.

Lucas agrees that the evidence at trial consisted of the following: (1) a person entered the bank and placed two plastic shopping bags on the counter, (2) inside one bag was a note instructing the teller to "put the money in the bag," and (3) Lucas told the teller to "put the money in the bag." Lucas' principle argument is that since there was no act on his part other than opening the bag and requesting the money, the theft did not involve "force, violence, or intimidation," which is an element of bank robbery.

In *United States v. Hopkins,* 703 F.2d 1102 (9th Cir.), *cert. denied,* 464 U.S. 963, 104 S.Ct. 399, 78 L.Ed.2d 341 (1983), we stated that " 'express threats of bodily harm, threatening body motions, or the physical possibility of concealed weapon[s]' are not required for a conviction for bank robbery by intimidation." *Hopkins,* 703 F.2d at 1103, *citing United States v. Bingham,* 628 F.2d 548, 549 (9th Cir.1980). In *Hopkins,* we found that a note that read "Give me all your hundreds, fifties and twenties. This is a robbery," coupled with the teller-victim's testimony that she was "intimidated, frightened, and concerned for her unborn child," was sufficient intimidation for a bank robbery conviction. *Id.*

The method of theft employed by Lucas is very similar to that used by the bank robber in *Hopkins.* Both used a written note coupled with verbal instructions to obtain money from their respective tellers. Furthermore, the teller in this case who was approached by Lucas testified that she was terrified. The facts do not support Lucas's claim that no reasonable trier of fact could have found Lucas guilty of bank robbery. Consequently, the district court's denial of Lucas's motion for acquittal should be affirmed.

## IV.

We reverse the district court's denial of Lucas's motion to suppress. However, we affirm the district court's choice of jury instruction and its denial of Lucas's motion for acquittal.

REVERSED IN PART, AFFIRMED IN PART, and REMANDED.