**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Brian Edward HENLEY, Defendant–Appellant.**

**No. 91–10439.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 17, 1992.

Decided Jan. 29, 1993.

---

Jared O. Smith, Tempe, AZ, for defendant-appellant.

Michael J. Bidwill, Asst. U.S. Atty. (argued), Phoenix, AZ, for plaintiff-appellee.

Before: KOZINSKI and DAVID R. THOMPSON, Circuit Judges, and ROBERT J. KELLEHER, Senior District Judge.*

KOZINSKI, Circuit Judge:

We consider whether a police officer violates a suspect's *Miranda* rights by obtaining an admission that the suspect owns a vehicle the officer has reason to believe was involved in illegal activity.

---

* The Honorable Robert J. Kelleher, Senior United States District Judge for the Central District of California, sitting by designation.

## Background

The Pima Savings and Loan in Phoenix, Arizona was robbed on January 17, 1991, by a gunman wearing a cap and sunglasses; the getaway car was a 1974 Plymouth Duster. Later the same day police found the vehicle and arrested Brian Henley. While Henley sat inside a police car, handcuffed, he was questioned by an FBI agent who asked him whether he owned the automobile. After Henley said that he did, the officer informed Henley he was investigating a bank robbery and that the police suspected Henley's car had been involved. Henley consented to a search of the automobile.

Inside the car the officers found a black baseball cap, a pair of sunglasses and a gun. Defendant's cousin eventually pled guilty to using those items to rob the Pima bank. Although prosecutors had hoped to bring charges against Henley for driving the getaway car, they were unable to locate key witnesses and Henley was not charged in the Pima robbery.

What the prosecutors were able to do, however, was link Henley to a different robbery by using the evidence found inside the car. On January 9, 1991—eight days before the Pima heist—a man wearing a similar disguise robbed the Southwest Savings and Loan in Phoenix, making off with $2870 of federally-insured funds. At Henley's trial for the Southwest robbery, the prosecution presented the evidence recovered from the car, as well as some photographic identifications, in-court identifications and the unfavorable results of Henley's polygraph examination.[1] A jury convicted Henley of the use of a firearm in a crime of violence, as well as armed robbery. 18 U.S.C. §§ 924, 2113. Henley appeals.

## Discussion

Henley argues that the admission into evidence of his statement that he owned the car violated his rights under *Miranda*

---

1. The parties stipulated in advance that the results of the polygraph would be admissible. *See* RT, vol. 3, at 72–73.

*v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He contends that the prosecution's use of his statement that he owned the car, to lay the foundation for introduction of the physical evidence discovered by the search, runs afoul of *Miranda*'s rule that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming·from custodial interrogation of the defendant." 384 U.S. at 444, 86 S.Ct. at 1612.

There is some confusion in this circuit whether a determination that a person was subjected to "custodial interrogation" is a question of fact reviewed for clear error or a mixed question of law and fact reviewed de novo. *Compare United States v. Gonzalez–Sandoval,* 894 F.2d 1043, 1046 (9th Cir.1990) *and United States v. Feldman,* 788 F.2d 544, 553–54 (9th Cir.1986), *cert. denied,* 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1989) (clear error) *with United States v. Lucas,* 963 F.2d 243, 245 (9th Cir.1992) (de novo). We need not address this issue, however, because the district court made no findings with respect to custodial interrogation; apparently it thought Henley was only challenging the voluntariness of the consent to search. *See* RT, vol. 3, at 33. We therefore review the record de novo as to custodial interrogation.[2]

■ A. Whether Henley was in custody at the time he admitted owning the car is easily resolved. Although Henley had not been formally arrested, he was handcuffed and placed in the back seat of a squad car. An FBI agent entered the vehicle and identified himself as such. The agent explained that he was investigating a bank robbery and that the officers believed Henley's car had been involved. RT, vol. 3, at 20–21. While Henley was told he was not under arrest, he testified that he did not feel free to leave. RT, vol. 3, at 28. It is fair to say that someone who is being questioned by an FBI agent while sitting handcuffed in the back of a police car is, indeed,

not free to leave. We have no trouble concluding that Henley "ha[d] been taken into custody or otherwise deprived of his freedom of action in [a] significant way." *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612.

■ Whether the officer's inquiry regarding Henley's ownership of the car constituted interrogation is a closer question. As we recognized in *United States v. Booth,* 669 F.2d 1231, 1237 (9th Cir.1981), "not every question is an interrogation. Many sorts of questions do not, by their very nature, involve the psychological intimidation that *Miranda* is designed to prevent." For example, asking the defendant his name, birthdate, address and the like ordinarily does not amount to interrogation; police officers typically have no reason to believe a suspect will incriminate himself by answering such questions. *See, e.g., Pennsylvania v. Muniz,* 496 U.S. 582, 598–600, 110 S.Ct. 2638, 2649–50 (1990); *see also United States v. Perez,* 776 F.2d 797, 799 (9th Cir.1985) ("Routine gathering of background biographical data does not constitute interrogation sufficient to trigger constitutional protections.").

■ When a police officer has reason to know that a suspect's answer may incriminate him, however, even routine questioning may amount to interrogation. Thus, while there is usually nothing objectionable about asking a detainee his place of birth, the same question assumes a completely different character when an INS agent asks it of a person he suspects is an illegal alien. *See Gonzalez–Sandoval,* 894 F.2d at 1046–47; *United States v. Equihua–Juarez,* 851 F.2d 1222, 1225–26 (9th Cir. 1988); *United States v. Mata–Abundiz,* 717 F.2d 1277, 1280 (9th Cir.1983).

■ The mere act of consenting to a search—"Yes, you may search my car"—does not incriminate a defendant, even though the derivative evidence uncovered may itself be highly incriminating. There-

---

**2.** Henley does not challenge the validity of the search on appeal, nor would he have a basis for doing so. While Henley was not advised of his rights before consenting to the search, RT, vol. 3 at 24, a valid consent to search need not be

preceded by *Miranda* warnings. *E.g., United States v. Ritter,* 752 F.2d 435 (9th Cir.1985); *United States v. Washington,* 957 F.2d 559 (8th Cir.1992).

fore, we have held that "[a] consent to a search is not the type of incriminating statement toward which the Fifth Amendment is directed. It is not in itself 'evidence of a testimonial or communicative nature.'" *United States v. Lemon*, 550 F.2d 467, 472 (9th Cir.1977) (quoting *Schmerber v. California*, 384 U.S. 757, 761–64, 86 S.Ct. 1826, 1830–32, 16 L.Ed.2d 908 (1966)). But the situation here was different. The prosecution did not merely rely upon Henley's consent to obtain the evidence. It used his admission that he owned the car to link him to the cap, gun and the sunglasses found within it. To determine whether this was interrogation, we must ask whether the agent *"should have known* [that his question] was reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 302, 100 S.Ct. 1682, 1691, 64 L.Ed.2d 297 (1980) (emphasis added); *see also Booth*, 669 F.2d at 1237.

In *United States v. Disla*, 805 F.2d 1340 (9th Cir.1986), we held that a defendant's response to questions regarding his place of residence should have been suppressed where the officer had preexisting knowledge of illegal behavior at the defendant's apartment. Because the officer was aware that "a large quantity of cocaine and cash had been found at [Disla's] apartment and that the resident(s) of the apartment had not been identified," 805 F.2d at 1347, he "should have known that the question regarding Disla's residence was reasonably likely to elicit an incriminating response." *Id.* We therefore concluded that Disla had been subjected to interrogation. *See also Mata–Abundiz*, 717 F.2d at 1280 ("The relationship of the question asked to the crime suspected is highly relevant.")

█ The situation here was similar to that in *Disla*. The police had identified Henley's car as the one used in the bank robbery that morning. RT, vol. 3, at 18. The FBI agent obviously hoped to find evidence in the car incriminating Henley;

that's why he wanted to search it. Evidently the agent knew before approaching Henley that there was some doubt about who owned the vehicle, *see id.* at 23–24; he asked Henley "if he was purchasing" the car or was in the process of doing so. *Id.* at 18. An officer investigating a bank robbery who has the getaway car but isn't sure who owns it should well know that asking a suspect if he's the owner of the vehicle is reasonably likely to elicit an incriminating answer. "In light of both the context of the questioning and the content of the question," *Disla*, 805 F.2d at 1347, we conclude that Henley was subjected to interrogation within the meaning of *Miranda*.

The district court therefore erred in denying the motion to suppress the statement. "Statements obtained in violation of *Miranda* may not be admitted against the accused, at least in the prosecution's case in chief." *United States v. Patterson*, 812 F.2d 1188, 1193 (9th Cir.1987), *cert. denied*, 485 U.S. 922, 108 S.Ct. 1093, 99 L.Ed.2d 255 (1988); *see also Fare v. Michael C.*, 442 U.S. 707, 718, 99 S.Ct. 2560, 2568, 61 L.Ed.2d 197 (1979); *Miranda*, 436 U.S. at 479, 86 S.Ct. at 1932. Although the district court found that the statement was voluntary, RT, vol. 3, at 33, this finding does not alter our conclusion that Henley's admission of ownership should have been suppressed. *Miranda* presumes conclusively that all responses to custodial interrogation are involuntary unless preceded by the prescribed warnings. *Miranda*, 384 U.S. at 474, 86 S.Ct. at 1627–28.

We do not impugn the officer's motivation for asking whether Henley owned the car; in fact, his stated reason for doing so made perfect sense: "The reason I asked that question is because I wanted to make certain if I was getting consent I wanted to get consent from the right party." RT, vol. 3, at 18.[3] The police may—and should—continue establishing ownership or

---

3. The standard for whether the question was likely to elicit an incriminating response is an objective one. *Rhode Island v. Innis*, 446 U.S. 291, 301–02, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980). The officer's intention in asking the question, although one factor in whether he should have anticipated an incriminating response, is not determinative. *Id.; see also Disla*, 805 F.2d at 1347.

authority before conducting consent searches. We hold only that such statements of ownership may not be admitted into evidence where police should have known that the response was likely to incriminate the defendant, unless, of course, *Miranda* warnings were first given.

■ B. Even though the district court erred in denying the motion to suppress Henley's statement of ownership, we will sustain the conviction "if admission of the un-*Mirandized* statements constituted harmless error." *Gonzalez–Sandoval*, 894 F.2d at 1047; *see also Arizona v. Fulminante*, —— U.S. ——, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). Although Henley's statement itself must be excluded, the physical evidence produced as a result of it—the cap, sunglasses and gun—are not rendered inadmissible simply because of the *Miranda* violation. "[T]he object of the Fifth Amendment exclusionary rule— assuring trustworthiness of evidence introduced at trial—is not served by barring admission of the derivatively obtained evidence." *Gonzalez–Sandoval*, 894 F.2d at 1048; *accord New York v. Quarles*, 467 U.S. 649, 666–74, 104 S.Ct. 2626, 2637–41, 81 L.Ed.2d 550 (1984) (opinion of O'Connor, J.) (physical evidence obtained in violation of *Miranda* not an illegal fruit).

To say that the Constitution does not require exclusion of this evidence is not to say that the district court would have let it in. Without Henley's admission of ownership, the prosecution would have been unable to link the items found in the car to Henley. The government presented no other proof that Henley owned the vehicle, such as a certificate of title, DMV registration or other testimony on this point. The government chose to rely exclusively upon Henley's statement that he owned the car to tie the evidence inside it to him. *See* RT, vol. 3, at 8.

Nor did the cap, sunglasses or pistol contain any independent significance without first establishing Henley's connection to the automobile. No other evidence, such as fingerprints, suggested that the items belonged to him. The district court noted just how important Henley's admission of ownership was: "[I]f he says it's not his car, they can still bring out the gun.... *They might not be able to tie up relevancy or materiality.*" RT, vol. 3, at 7 (emphasis added). Given this recognition, we doubt whether the court would have admitted the evidence without Henley's admission that he owned the car; in fact, to do so would most likely have been error. *See* Fed.R.Evid. 402 (evidence must be relevant to be admitted). Even had the items been admitted, without Henley's statement the prosecution would have had a much harder time convincing the jury that it was Henley who had used them in the Southwest holdup.

The other evidence adduced against Henley was not insubstantial. The prosecution offered in-court identifications, photographic and video surveillance identification in addition to the stipulated polygraph results. *See* RT, vol. 2, at 149, 151–53, 184–87; RT, vol. 3, at 72–73. Although the reliability of this evidence was vigorously disputed, the jury could have found it sufficient to convict Henley. Yet we are unpersuaded that this other evidence was so overwhelming that the jury would have been convinced beyond a reasonable doubt that Henley was the Southwest Savings gunman without Henley's admission that he owned the vehicle containing the cap, gun and sunglasses. Indeed, the prosecution's summation emphasized repeatedly the importance of this evidence in linking Henley to the Southwest robbery: "[Y]ou've got the hat and the sunglasses that were *found in his car*. The circumstantial evidence that also ties him in. *And that link, it was his car, it's there.*" RT, vol. 3, at 95 (emphasis added); *accord id.* at 146–47.

We are not unmindful that the government may have been unfairly prejudiced by the way the defendant raised this issue below. Rather than bringing a pretrial suppression motion as required by Federal Rule of Criminal Procedure 12(b)(3), Henley first raised the claim of custodial interrogation during the trial. *See* RT, vol. 3, at 4. At first the district court refused to hold a suppression hearing because of the delay,

but the court later agreed to hold a mid-trial suppression hearing, at the conclusion of which it denied defendant's motion. *Id.* at 15, 32–35.[4] At oral argument before us, the Assistant United States Attorney claimed that the government would have been able to provide other evidence linking the car to Henley, had it been given timely notice that it couldn't rely upon Henley's statement. The government, however, raised no objection to holding the suppression hearing in the middle of the trial; nor did it request a continuance in order to obtain more evidence. Knowing that Henley's confession was put in doubt by the motion to suppress, the government nonetheless chose to rely on the statement as the linchpin for introducing the highly probative evidence of the cap, gun and sunglasses. It did so at its own peril.

### Conclusion

Because we cannot say that "the district court's admission of [Henley's] statement was harmless beyond a reasonable doubt," *Disla*, 805 F.2d at 1347, we must reverse the conviction. As there may be a retrial, we have reviewed the remainder of Henley's contentions and find that the district court's evidentiary rulings fell well within its discretion.

**REVERSED and REMANDED.**

KELLEHER, Senior District Judge, dissenting.

Respectfully, I dissent.

, As the majority notes, Henley failed to bring his motion to suppress [1] in compliance with Federal Rule of Criminal Procedure 12(b)(3). Rule 12(b)(3) requires in simple, direct language that motions to suppress evidence be raised prior to trial. Henley first brought his motion to suppress his admission that he owned the automobile in the midst of the trial.

The majority speculates vaguely that "the government may have been unfairly prejudiced by the way the defendant raised this issue below." Opinion at 1044. I think it self evident that the government was so prejudiced. The government asserted at oral argument that had it been given timely notice of the objection to Henley's statement of ownership it could have provided other evidence of Henley's ownership of the car. In other words, had the government been put on timely notice, as it must be under Rule 12(b)(3), it would have obtained and placed in evidence a certificate of title. To allow Henley to escape conviction as a reward for the ploy of misleading the government is to encourage more of the same by defense lawyers in criminal cases.

The majority, perhaps insinuating sloth on the government's part, mentions other proof of ownership the government could have presented, such as a certificate of title, Department of Motor Vehicles ("DMV") registration form, or testimony. *Id.* at 1044. This glib reference to the availability of other forms of evidence does the government a disservice. Despite the

---

4. Failure to make a suppression motion before trial constitutes a waiver that the court may excuse for cause. Fed.R.Crim.Proc. 12(f). Henley's lawyer represented to the district court that he "had no notice [the prosecution was] going to use that statement against [Henley]. No notice. If I would have been aware ... I would have moved to suppress it." RT, vol. 3, at 4. After hearing counsel's explanation, the district court decided to halt the trial to conduct the suppression hearing. *Id.* at 15, 33.

Much of our disagreement with the dissent turns on this ruling. Our dissenting colleague suggests the defendant's tardy suppression motion was a "ploy of misleading the government." Dissent at 790. But the district court is in a far better position than we to determine whether defense counsel's explanation was a ruse. The court's ruling was based on an implicit finding

that it was not, a finding which is not clearly erroneous. Even had the government objected to the delayed suppression hearing—which it did not—we would review for abuse of discretion. *See, e.g., United States v. Rabb,* 752 F.2d 1320, 1323 (9th Cir.1984), *cert. denied,* 471 U.S. 1019, 105 S.Ct. 2027, 85 L.Ed.2d 308 (1985). Given the district court's finding, it is unthinkable that we would hold that the court abused its discretion.

1. The evidence Henley moved to suppress is his statement that he owned the automobile in which were found the baseball cap, sunglasses, and gun used in the bank robbery for which he was convicted. The district court's admission of this statement is the error upon which Henley's appeal is predicated.

simplicity of obtaining a certificate of title. from the DMV, it takes time. Bureaucracy being what it is, a week or longer is required to obtain a certificate of title sufficiently authenticated to be received in evidence.

The notion that midway through the course of a criminal jury trial the district court could just continue the trial for a week is naive at best. Sending an impaneled jury off to bide its time for a week while evidence is obtained presents a scenario rife with potential problems. However, had the defendant tipped his hand before the trial, as Rule 12(b)(3) requires, the evidence would have been readily and timely available.[2] Indeed, the very purpose of the Rule is to prevent what happened here.[3]

The majority appears to fault the government for neither objecting to holding the suppression hearing in the middle of trial nor seeking a continuance in order to obtain more evidence. The majority apparently considers the government to have exhibited poor judgment by accepting its victory in the suppression hearing and proceeding with the remainder of the trial. My colleagues stress that the government knew Henley's statement was "put in doubt" by the motion to suppress. Opinion at 1045. They seem to find it remarkable that the government "nonetheless chose to rely on the statement ...," *id.*, commenting that it did so at its own peril, *id.*

This depiction seems to cast the government's common sense course of conduct in an exceedingly uncharitable light. To begin with, the government prevailed on the motion to suppress. In addition, my reading of the record reveals nothing to undermine the veracity of Henley's statement that he owned the car at the time he was arrested. That fact appears to be beyond dispute.

Given the facts that Henley's ownership of the car appears to be an indisputable fact and that the district court denied Henley's motion to suppress, the most sensible course for the government to have taken is the one it took. Henley's statement had been ruled admissible. Its introduction in evidence clearly was the most efficient way to establish on the record the fact of Henley's ownership. To expect the government to insist on an apparently unnecessary continuance in order to obtain another form of evidence for the purpose of buttressing the establishment of an evidently incontrovertible fact is unrealistic.

I find most difficult to accept the majority's characterization of its decision to reverse the district court as a form of deference to the district court's discretion. Responding to this dissent, the majority interprets the district court's decision to hold the midtrial suppression hearing as being "based on an implicit finding" that Henley's extremely dilatory bringing of his motion to suppress involved no strategy. *Id.* at 1045 n. 4. The majority bases this assumption on defense counsel's patently uncreditable claim that he had no idea the government might use Henley's admission of ownership of the car. *Id.* at 1045 n. 4. Assuming this supposed implicit finding as the basis for the district court's decision to hold the suppression hearing, the majority opines "it is unthinkable that we would hold that the court abused its discretion." *Id.* at 1045 n. 4.

I am unpersuaded that the majority has correctly divined the reasoning or supposed

---

2. At oral argument, the government represented that had it been notified in a timely fashion that it could not rely on Henley's statement, it would have been able to provide other evidence linking the car to Henley. On the record before us, there does not appear to be any doubt regarding the veracity of Henley's admission that the car was his. Thus, there is no reason to doubt the government's claim that, given adequate time, it could have obtained and produced other admissible evidence establishing Henley's ownership of the car.

3. "[S]ubdivision (b)(3) makes clear that objections to evidence on the ground that it was illegally obtained *must be raised prior to trial.*" Fed.R.Crim.P. 12, Notes of the Advisory Committee on Rules, 1974 Amendment. The Advisory Committee made clear that the provision of Rule 12(b)(3) was both modeled on and adopted to address the same concerns as Rule 41(e), namely "to eliminate from the trial disputes over police conduct not immediately relevant to the question of guilt." *Id.* (quoting *Jones v. United States,* 362 U.S. 257, 264, 80 S.Ct. 725, 732, 4 L.Ed.2d 697 (1960)).

"implicit" finding underlying the district court's decision to hear Henley's motion to suppress in the middle of trial. It seems at least equally plausible to suppose that the district court reserved its judgment as to whether defense counsel had shown sufficient cause to justify its delay in bringing the motion, and allowed the impromptu hearing to go forward in order to understand more fully what there might be to Henley's position vis à vis his admission of ownership—both in terms of his substantive objection to the admission's introduction in evidence and the credibility of defense counsel's representation that he had no reason to anticipate the government's use of Henley's admission.

It seems reasonable for the government not to have objected to the midtrial hearing because, quite properly, Henley's motion was regarded as unmeritorious. Indeed, the government's confidence was justified—the motion was denied.

Correction of the sole error on which the majority predicates its ruling cannot alter the outcome in this case. Rather, by reversing the jury's verdict below, the majority merely requires the government and court system to spend their already inadequate time and funds on the retrial of an indisputably guilty felon. Therefore, I dissent.