990 F.2d 1262
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
William E. DUNGAN, Defendant-Appellant.
 No. 91-10228.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 2, 1992.
Decided March 22, 1993.
 
 Before BOOCHEVER, NOONAN and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 In January 1990, a two-count federal indictment was handed down charging William Earl Dungan ("Dungan") with possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1), and possession of a firearm by a dangerous felon, 18 U.S.C. § 924(e)(1). In exchange for dismissal of the latter charge, which carries a mandatory minimum penalty of fifteen years imprisonment, Dungan pled guilty to the former. In his plea agreement, Dungan expressly waived his right to appeal his sentence, although he "retain[ed] the right to appeal from any departure from the sentencing guidelines." The court calculated Dungan's adjusted offense level as 24, and placed him in criminal history category VI, yielding a Guidelines range of 100 to 125 months. Dungan was sentenced to 100 months.
 
 
 3
 Dungan filed a timely notice of appeal challenging his sentence in a number of respects. We have jurisdiction under 28 U.S.C. § 1291. We vacate the sentence and remand for resentencing.
 
 
 4
 * This court has squarely held that "an express waiver of the right to appeal in a negotiated plea of guilty is valid if knowingly and voluntarily made." United States v. Bolinger, 940 F.2d 478, 479 (9th Cir.1991) (citing United States v. Navarro-Botello, 912 F.2d 318, 322 (9th Cir.1990)). Dungan does not contend that his plea was not knowing and voluntary.
 
 
 5
 We have also recognized a "narrow exception" to the waiver rule, noting that "waiver of the right to appeal 'would not prevent an appeal where the sentence imposed is not in accordance with the negotiated agreement.' " Bolinger, 940 F.2d at 480 (quoting Navarro-Botello, 912 F.2d at 321). Dungan, however, concedes that "he cannot argue that the sentence imposed was not in accordance with the negotiated agreement...." See Response to Motion to Dismiss Appeal and Stay of Briefing Schedule at 2. This concession is apparently made in recognition of the fact that, because the term of 100 months imposed by the court is less than the maximum ten-year term applicable to the offense of conviction and incorporated into the plea agreement, the sentence imposed is not "outside the negotiated agreement" for purposes of the Navarro-Botello exception. See Bolinger, 940 F.2d at 480 ("The plain meaning of the plea agreement is that Bolinger waived his right to appeal the sentence ... unless he received a term of incarceration in excess of 36 months. The sentence does not exceed the 36 month cap; therefore, Bolinger has waived his right to appeal the application of the guidelines.").[1]
 
 
 6
 Dungan argues, however, that his plea agreement is distinguishable from the one at issue in Bolinger because it explicitly exempts "the right to appeal from any departure from the sentencing guidelines" from the scope of his waiver. The question this places before us is what sorts of errors this retention of rights permits him to raise on appeal.
 
 II
 
 7
 "A plea bargain, being contractual in nature, is subject to contract law standards." United States v. Pomazzi, 851 F.2d 244, 250 (9th Cir.1988). "In determining whether a plea agreement has been broken, courts look to what was reasonably understood by the defendant when he entered his plea of guilty." United States v. Serrano, 938 F.2d 1058, 1061 (9th Cir.1991) (internal quotations and citations omitted). "In order to determine whether the sentence imposed comports with the reasonable understanding and expectations of the defendant as to the sentence for which he had bargained, we look to the objective proof of the record." United States v. Kamer, 781 F.2d 1380, 1387 (9th Cir.1986). Although the above propositions refer to the controlling importance of the defendant's reasonable understanding and expectations with respect to the agreed upon sentence, there seems no reason why they should not apply with equal force to all other terms of a plea agreement, including the scope of a retention of the right to appeal.
 
 
 8
 As noted, the plea agreement provides for Dungan's retention of "the right to appeal from any departure from the sentencing guidelines." Under one construction of this provision, a sentencing court could be understood to "depart" from the Guidelines when it invokes its discretion to impose a sentence that is not within the range established by the Guidelines as applicable given the defendant's offense level and criminal history category. U.S.S.G. § 5K2.0 provides for such departures. Any error committed in deciding upon the proper range (i.e., calculating the offense level or determining the criminal history score) could then be characterized as a "misapplication" or "misinterpretation" of the Guidelines rather than a "departure" from them. On this view, the district court could not be deemed to have departed from the Guidelines in sentencing Dungan at all.
 
 
 9
 The term "departure" as used in the plea agreement, however, may be understood as having a broader meaning than the technical application which the term would suggest. Dungan's plea agreement was amended to include the right to appeal "from any departure" during the Rule 11 colloquy. The amendment followed on the heels of the district court's explanation of how Dungan would be sentenced under the agreement:
 
 
 10
 And, let me tell you further that with respect to a guideline sentence, that the procedure is that a range is provided to the Court, a minimum number of months and a maximum number of months. And, the Court must impose a sentence within that guideline range, unless it determines to make a departure (emphasis supplied).
 
 
 11
 At the plea hearing, Dungan's counsel stated that he and Dungan had not previously discussed "the possibility of a departure," and Dungan expressed confusion about what the term implied. Dungan's only basis for forming a belief about what his retention of "the right to appeal from any departure" secured to him was the explanation of the sentencing procedure provided by the district court. This explanation might well have suggested to Dungan that a "departure" encompassed any deviation from the "range ... provided to the Court," i.e., the range mandated by the Sentencing Guidelines. Indeed, the district court emphasized in its discussion the fact that it was bound to impose sentence in accordance with the Guidelines. Under the circumstances, and in the absence of a specific reference to departures under section 5K2.0, we think Dungan could reasonably have expected that the term had its more generic meaning, so that his plea agreement would permit him to raise on appeal the allegation that the district court "departed" from the Guidelines when it calculated the applicable sentencing range incorrectly.
 
 III
 
 12
 We therefore address Dungan's contention that the district court erred in applying the career offender enhancement, U.S.S.G. § 4B1.1, in calculating the Guidelines range applicable to his conviction.[2] Dungan argues that his offense of conviction--possession of a firearm by a convicted felon--is not a "crime of violence" within the meaning of the career offender provisions, and therefore does not trigger the career offender enhancement. We are compelled to agree.
 
 
 13
 Under our decision in United States v. Sahakian, 965 F.2d 740 (9th Cir.1992),[3] the offense to which Dungan pled guilty cannot be considered a crime of violence under section 4B1.2 unless "the actual conduct [the indictment] charges involve[s] a serious potential risk of physical injury to another." Id. at 742. Count I of the indictment returned against Dungan charged only that he "did knowingly possess a firearm." We are therefore bound to "conclude that this conviction of being a felon in possession is not a conviction of a crime of violence...." Id.
 
 IV
 
 14
 Because the district court improperly applied a career offender enhancement in sentencing Dungan, the sentence must be VACATED and the case REMANDED for resentencing.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Dungan urges us to reconsider the wisdom of our holding in Bolinger. This panel, of course, has no authority to do so. See United States v. Lucas, 963 F.2d 243, 247 (9th Cir.1992)
 
 
 [2]
 We have examined Dungan's other allegations of error and concluded that all are encompassed by his waiver of the right to appeal. We therefore do not consider them here
 
 
 [3]
 Both parties' briefs address the career offender issue with reference to United States v. O'Neal, 937 F.2d 1369 (9th Cir.1990). O'Neal was decided under the Guidelines in effect prior to the November 1989 amendments, and held that being a felon in possession of a firearm was a crime of violence requiring application of § 4B1.1. The court in Sahakian noted that the 1989 amendments had "redefined crime of violence," thus "call[ing] into question the continued viability of O'Neal's conclusion...." Sahakian, 965 F.2d at 742. The court's ultimate holding in the case serves to restrict the application of O'Neal to sentences imposed under the pre-November 1989 Guidelines
 Dungan was sentenced in 1991; thus, O'Neal has no bearing on this appeal. This is so notwithstanding the government's contention that "this Court applies the Guideline provision and the caselaw in effect at the time of Dungan's sentence" (emphasis supplied). The emphasized language suggests that we are bound to apply O'Neal here and to ignore Sahakian. Such a proposition makes little sense, and rests on a misstatement of the authority cited by the government. See United States v. Mims, 928 F.2d 310, 312 n. 1 (9th Cir.1991) (appellant "is entitled to avail himself of the Sentencing Guidelines provisions that were in effect at the time of his sentencing"; no mention of "caselaw"). See also United States v. Carvajal, 905 F.2d 1292, 1294 (9th Cir.1990) ("we will use the 1987 text of the Sentencing Guidelines ... because that is the version under which [appellant] was sentenced").
 We also note that the government's brief, written before the decision in Sahakian was handed down, observes that subsequent to Dungan's sentence, the Application Notes to § 4B1.2 were amended to make clear that possession of a firearm by a felon is not a crime of violence for § 4B1.1 purposes. The government suggests that this amendment, effective November 1, 1991, changed the law under the Guidelines, and that Dungan cannot claim the benefit of this change because "this Court applies the Guidelines ... in effect at the time of Dungan's sentence." Id.
 A reading of Sahakian makes clear, however, that the court did not rely on the 1991 amendment to the Application Notes to support its decision, but grounded its holding on the language of § 4B1.2 itself as amended effective November 1, 1989. See Sahakian, 965 F.2d at 742 (characterizing 1991 amendment to Application Notes as "clarifying amendment" that "confirms our reading of the effect of the 1989 amendment"). Sahakian thus does set forth the law applicable at the time of Dungan's sentencing.