COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS


FELICIA KAYE MURRAY, a/k/a
FELICIA KAYEK MURRAY, a/k/a
FELICIA K. MURRAY,

　　　　　　　Appellant,

v.

THE STATE OF TEXAS,

　　　　　　　Appellee.

§
§
§
§
§
§
§
§

No. 08-11-00344-CR

Appeal from the

Criminal District Court No. 1

of Tarrant County, Texas

(TC# 1225055D)

## O P I N I O N

Felicia Murray appeals from the trial court's judgment convicting her of aggravated robbery with a deadly weapon and sentencing her to thirty years' imprisonment – a sentence enhanced pursuant to the habitual-offender statute. In a single issue, Appellant contends that the trial court erred by denying her motion to suppress inculpatory statements made to police detectives because she was in custody and had not been advised of her *Miranda* rights. For the reasons that follow, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Following a robbery at gun point during which a witness observed the robber leave in a vehicle driven by an African-American woman, a police officer spotted a vehicle matching the description provided by the witness. The vehicle, registered to Appellant, was spotted in front of

the house inside of which police encountered Appellant and two males, one of whom was the robber.

Appellant was handcuffed and placed in the back of a patrol car. The police officer testified that he did so for officer safety because he did not have an opportunity to search Appellant for a weapon when one had been reported and she was suspected of being involved in the robbery. Appellant remained handcuffed in the car for an indeterminate amount of time until Detective Desmarais arrived and ordered the handcuffs removed. Appellant was then placed in Detective Desmarais' vehicle and driven to the police administration building for an interview. When Appellant arrived at the police administration building, she was not in handcuffs. During her interview with Detectives Desmarais and Ransford, Appellant was asked if she understood that she was not under arrest and that she was there voluntarily. Appellant initially responded that she understood, but then stated "Naw I didn't know that, but now I know." Detective Desmarais reiterated that she was not under arrest. Seconds after uttering "Ok" in response to Detective Desmarais pronouncement, Appellant stated "I didn't know I came on my own free will . . . ." Appellant continued to speak with the detectives. She admitted she was at the scene of the robbery and knew the robber and had given him rides before, but denied she was his getaway driver. Near the conclusion of the interview, Detective Desmarais informed Appellant that he could arrest her then, but would not do so. After the 35-minute interview ended, Detective Desmarais drove Appellant home.

## CUSTODIAL INTERROGATION

Appellant argues that she was in custody when she was left handcuffed in the patrol car for an indeterminate period and, notwithstanding that the handcuffs were removed, remained in

custody for the duration of her encounter with the police. We disagree.

## Standard of Review

Because questions of custody present a mixed question of law and fact, we afford almost total deference to a trial judge's "custody" determination when the questions of historical fact turn on credibility and demeanor. *See Herrera v. State*, 241 S.W.3d 520, 526-27 (Tex.Crim.App. 2007); *see also Jeffley v. State*, 38 S.W.3d 847, 853 (Tex.App.--Houston [14th Dist.] 2001, pet. ref'd). When, however, the questions of historical fact do not turn on credibility and demeanor, we review a trial judge's "custody" determination *de novo*. *See Herrera*, 241 S.W.3d at 526-27; *Jeffley*, 38 S.W.3d at 853. The defendant, not the State, carries the initial burden of establishing that a statement was the product of custodial interrogation. *Herrera*, 241 S.W.3d at 526.

## Applicable Law

Article 38.22 of the Texas Code of Criminal Procedure prohibits the admission of an accused's statement resulting from a custodial interrogation unless she was advised of her *Miranda* rights and voluntarily waived those rights. TEX.CODE CRIM.PROC.ANN. art. 38.22, §§ 2(a), 2(b), 3(a)(2)(West 2005); *see Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *see also Herrera*, 241 S.W.3d at 526 ("Our construction of 'custody' for purposes of Article 38.22 is consistent with the meaning of 'custody' for purposes of *Miranda*."). However, the warnings required by Article 38.22 and *Miranda* only apply when a suspect is in custody. *See Herrera*, 241 S.W.3d at 526.

A person is "in custody" if, under the circumstances, a reasonable person would believe her freedom of movement was restrained to the degree associated with a formal arrest. *Stansbury v. California*, 511 U.S. 318, 322-24, 114 S.Ct. 1526, 1528-30, 128 L.Ed.2d 293 (1994); *Dowthitt v.*

3

*State*, 931 S.W.2d 244, 254 (Tex.Crim.App. 1996). We determine custody based on objective circumstances, and any subjective intent of law enforcement officers or the person being questioned are not controlling. *Stansbury*, 511 U.S. at 323, 114 S.Ct. at 1529.

As the Court of Criminal Appeals noted in *Dowthitt*, Texas courts have identified four general situations that may constitute custody: (1) when the suspect is physically deprived of her freedom of action in a significant way; (2) when a law-enforcement official tells a suspect she cannot leave; (3) when law-enforcement officers create a situation that would lead a reasonable person to believe that her freedom of movement has been significantly restricted; and (4) if there is probable cause to arrest and law-enforcement officials do not tell the suspect that she may leave. *Dowthitt*, 931 S.W.2d at 255, *citing Shiflet v. State*, 732 S.W.2d 622, 629 (Tex.Crim.App. 1985). The restraint upon freedom in the first three situations must be equivalent with that associated with an arrest as opposed to an investigative detention. *See Dowthitt*, 931 S.W.2d at 255. In the fourth situation, the officer's knowledge of probable cause must be manifested to the suspect, and such manifestation, considered in the totality of the circumstances, must lead a reasonable person to believe she is not free to leave. *Id*.

### *Analysis*

Considering the totality of the circumstances, several factors tend to demonstrate that Appellant was not in custody when she was interviewed by the detectives. The record does not reflect that she was under formal arrest at any point during her encounter with the police. The patrol officer who handcuffed her testified he did so for officer safety. Detective Ransford testified that Appellant was not under arrest when he and Detective Desmarais interviewed her. Although Detective Desmarais informed Appellant near the conclusion of the 35-minute interview

4

that they had sufficient evidence to arrest her, in the same breath he told her that he was not going to arrest her. And in fact, he did not.

Nor does the record reveal that any officer communicated to Appellant that she was not free to leave. There is no evidence that the patrol officer or the detectives informed her that she was not free to leave. Indeed the facts are to the contrary. More importantly, at the outset of the interview, Detectives Desmarais and Ransford advised Appellant that she was not under arrest and that she was giving a voluntary statement. It is thus evident that the restraint upon Appellant's freedom of movement is not equivalent to that associated with an arrest. *See Dowthitt*, 931 S.W.2d at 255.

Appellant maintains that the use of handcuffs is a significant factor, if not the key factor, in concluding that she was in custody for purposes of *Miranda*. The State acknowledges that the use of handcuffs "is an important factor in determining whether that person is in 'custody' for purposes of [*Miranda*] . . ." but counters that, in and of itself, the use of handcuffs does not always constitute a formal arrest or restraint to the degree associated with a formal arrest. None of the cases cited by Appellant hold that placing a suspect in handcuffs automatically equates to custody. Indeed, the Texas Court of Criminal Appeals has reiterated that the mere act of handcuffing, by itself, does not establish custody, but is only one of a range of relevant factors in determining that a suspect is in custody. *State v. Ortiz*, 382 S.W.3d 367, 374 (Tex.Crim.App. 2012); *see Balentine v. State*, 71 S.W.3d 763, 771 (Tex.Crim.App. 2002)(the placing of handcuffs on a defendant does not, in and of itself, mean he is in custody). The other cases cited by Appellant have concluded that the use of handcuffs is significant, but not decisive, in determining if a suspect is in custody. More importantly, because the cases have additional, material facts not present here, they are inapposite.

5

For example, in *U.S. v. Henley*, 984 F.2d 1040, 1042 (9th Cir. 1993), the court held that a defendant questioned by an FBI agent while sitting handcuffed in the back of a police car was in custody. Likewise, in *United States v. Newton*, 369 F.3d 659, 675-77 (2d Cir. 2004), the court held that a suspect questioned by six officers while sitting in his apartment handcuffed and in his underwear was in custody. In contrast to the defendants in *Ortiz*, *Henley*, and *Newton*, Appellant was not questioned at the scene while handcuffed; she was questioned at the police administration building without handcuffs.

Appellant attempts to diminish the significance of having her handcuffs removed. First, she argues that "once she was taken into custody, she remained in custody, since there was no evidence that she was released from custody . . . ." In so arguing, she posits that the police officer's testimony that he removed her handcuffs before placing her in Detective Desmarais' vehicle "is no evidence of a break in custody." She cites no authority in support of this proposition nor does she explain why this is necessarily so. Moreover, because the officer's testimony is a historical fact that turns on credibility and demeanor, we defer to the trial judge's implicit determination that the officer was a credible witness whose testimony supported the conclusion that Appellant was not in custody. *See Herrera*, 241 S.W.3d at 526.

Appellant next suggests that, when other facts are considered, "the fact that the handcuffs were removed prior to any questioning becomes unimportant . . . ." She identifies these facts as: (1) the interview occurred at the police administration building and it was accusatorial in nature; (2) she was dependent on transportation to and from the interview; and (3) there is no evidence that her handcuffs were removed before she accompanied Detective Desmarais to the interview. As with her first argument, Appellant neither cites nor applies any law in support of this argument.

6

More importantly, she fails to provide a reasoned explanation how these facts collectively constitute custody given that each fact standing alone does not constitute custody. *See Dowthitt*, 931 S.W.2d at 255(station-house questioning does not automatically constitute custody); *Meek v. State*, 790 S.W.2d 618, 621 (Tex.Crim.App. 1990)(being the focus of the investigation does not equate to being in custody); *Rodriguez v. State*, 191 S.W.3d 428, 441-42 (Tex.App.--Corpus Christi 2006, pet. ref'd)(person transported to a law enforcement facility by an officer in the course of an investigation is not in custody if he voluntarily accompanied the officer upon the officer's invitation, request, or urging without the threat that he would be taken in a forcible manner).

Appellant has failed to carry her burden of establishing that she was in custody when she made her inculpatory statements. *See Herrera*, 241 S.W.3d at 526. It is clear that there was no significant deprivation of freedom of movement, and a reasonable person would not consider herself in custody in this particular situation. She spoke to the detectives for thirty-five minutes and at the conclusion of the interview, she was permitted to leave. Finding no error, we deny Appellant's sole issue and affirm the judgment of the trial court below.

March 6, 2013

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.
Antcliff, J. (Not Participating)

(Do Not Publish)

7