NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

JUL 10 2023

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 21-10371 |
| Plaintiff-Appellee, | |
| v. | D.C. No. 1:18-CR-00207-DAD-SKO-7 |
| LORENZO AMADOR, | |
| Defendant-Appellant. | MEMORANDUM* |

Appeal from the United States District Court
for the Eastern District of California
Dale A. Drozd, District Judge, Presiding

Argued and Submitted June 7, 2023
San Francisco, California

Before: MILLER and KOH, Circuit Judges, and MOLLOY,** District Judge.
Concurrence by Judge KOH.

Following a jury trial, Lorenzo Amador was convicted of assault with a

dangerous weapon in aid of racketeering and drug conspiracy based on his

activities as part of the MS-13 gang in Mendota, California. He alleges error

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Donald W. Molloy, United States District Judge for the
District of Montana, sitting by designation.

1

related to the admission of a booking statement confirming his gang moniker ("Catracho") and in the jury instruction regarding the membership purpose requirement of the Violent Crimes in Aid of Racketeering Act, 18 U.S.C. §§ 1959, *et seq.* ("VICAR"). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1. We review "a denial of a motion to suppress and whether a defendant is constitutionally entitled to *Miranda* warnings *de novo*." *United States v. Craighead*, 539 F.3d 1073, 1082 (9th Cir. 2008); *see Miranda v. Arizona*, 384 U.S. 436 (1966). Assuming without deciding that Amador's acknowledgement of his gang moniker[1] should have been excluded from the government's case-in-chief, *see United States v. Williams*, 842 F.3d 1143, 1148–50 (9th Cir. 2016), the district court's failure to do so was harmless beyond a reasonable doubt, *see United States v. Gonzalez-Sandoval*, 894 F.2d 1043, 1047 (9th Cir. 1990). The trial evidence showed that Amador had two cellphones and two Facebook accounts, all four of which were linked to Amador himself through subscriber information, messages, or photographs. In turn, messages and references on these accounts showed that he represented himself to other individuals as "Catracho." It is therefore "clear beyond a reasonable doubt that the jury would have returned a verdict of guilty" even if the unconstitutionally obtained statement had been excluded. *United States*

---

[1] Amador's request to add the "Inmate Classification Questionnaire" to the record is construed as a motion to supplement and granted. Dkt. 9; *see* Fed. R. App. P. 10(e)(2)(C).

2

*v. Velarde-Gomez*, 269 F.3d 1023, 1034 (9th Cir. 2001) (en banc) (internal quotation marks omitted).

2. We "review *de novo* whether a jury instruction correctly states the law." *United States v. Renzi*, 769 F.3d 731, 755 (9th Cir. 2014). As recognized by Amador, the government need not prove under VICAR that Amador's membership purpose—gaining entrance to, or maintaining or increasing his position in, the MS-13—was the "but-for" cause of his conduct. *United States v. Rodriguez*, 971 F.3d 1005, 1010–11 (9th Cir. 2020). Rather, as instructed by the district court, his membership purpose need only be "a substantial purpose." *Id.* at 1010 (quoting *United States v. Banks*, 514 F.3d 959, 969 (9th Cir. 2008)).

**AFFIRMED.**

*United States v. Amador*, 21-10371

KOH, Circuit Judge, concurring:

Although I agree with the majority's conclusion that the violation was harmless beyond a reasonable doubt on the facts of this case, I write separately to express my view that asking Lorenzo Amador—who was detained on gang charges—for his "gang moniker" constituted custodial interrogation. Therefore, the prosecution's use of Amador's un-Mirandized answer to that question in its case-in-chief violated Amador's rights under *Miranda v. Arizona*, 384 U.S. 436 (1966).

"[T]he ultimate test for whether questioning constitutes interrogation is whether, in light of all the circumstances, the police should have known that a question was reasonably likely to elicit an incriminating response." *United States v. Booth*, 669 F.2d 1231, 1238 (9th Cir. 1981). In *United States v. Williams*, the Ninth Circuit found that questions about gang affiliation, even if asked for routine inmate classification purposes, are reasonably likely to elicit incriminating information "when murder is the charge." 842 F.3d 1143, 1148–49 (9th Cir. 2016). The court reached that conclusion based on the connections between murder and gang membership and the additional liability and enhanced penalties faced by people arrested for violent crimes when gang membership is involved. *Id.* at 1147–49. Here, the incriminating nature of gang-related questions was even

starker than in *Williams*, because unlike in that case, Amador was—as was stated front and center on the questionnaire with the gang-related questions, including the moniker question—arrested on gang charges.

The government nevertheless contends that because this case involves a gang *moniker* question and not a gang *affiliation* question, this court's earlier decision in *United States v. Washington* controls. 462 F.3d 1124 (9th Cir. 2006). *Washington*, like this case, involved a gang moniker question asked for inmate classification purposes. In that case, however, the defendant argued that the question was incriminating because it "was designed to elicit proof that, when [a] confidential informant stated that 'Rock' was involved with the bank robbery, the informant was talking about Washington." *Id.* at 1133. The court found this argument an unwarranted extension of what it means for a question to elicit an incriminating response, for it would mean that "any time an informant uses a particular name to identify the person who committed a crime, it would be impermissible interrogation for the police to ask the suspect his name because confirming his identity would be 'incriminating.'" *Id.*

The argument Amador raises, however, is one *Washington* (which did not involve gang-related crimes) did not address. Amador argues that given the nature of the gang charges against him, the gang-related nature of the question made it reasonably likely to elicit an incriminating response. As *Williams* and other cases

2

recognize, "[t]he relationship of the question asked to the crime suspected is highly relevant." *United States v. Mata-Abundiz*, 717 F.2d 1277, 1280 (9th Cir. 1983). *Washington*—and, for that matter, *Williams*'s discussion of *Washington*—does not approve any name-related question as falling within the routine booking exception. As ever, the inquiry depends on "all the circumstances," so a question that was not incriminating in one case may be incriminating in another. *Williams*, 842 F.3d at 1147 (quoting *Booth*, 669 F.2d at 1238); *see also United States v. Henley*, 984 F.2d 1040, 1042 (9th Cir. 1993) ("[W]hile there is usually nothing objectionable about asking a detainee his place of birth, the same question assumes a completely different character when an INS agent asks it of a person he suspects is an illegal alien.").

In a gang case, gang-related questions about a suspect's gang moniker are interrogation just as gang-related questions about his gang affiliation are. The government contends that the gang moniker question requires the police to "connect the dots" for the information to be incriminating in a way the gang affiliation question does not. But those dots are not hard to connect, especially where, as here, the question is asked in a series of questions probing the detainee's gang membership. A reasonable officer understands that an individual who gives a name in response to a question asking for his *gang moniker* has just acknowledged affiliation with a gang. In a case where gang membership is at issue, that response

3

is incriminating.  Therefore, I would hold that the introduction of Amador's

statement in the government's case-in-chief violated Amador's *Miranda* rights.